PER CURIAM.
Otis Jackson was convicted of robbery in the third degree and was sentenced to 30 years’ imprisonment. Jackson filed a petition for writ of error coram nobis, which the trial court denied. The Court of Criminal Appeals affirmed the judgment. 537 So.2d 73. This Court granted a writ of certiorari.
Jackson filed for the writ on September 26, 1986. On December 5, 1986, Wilcox County Circuit Judge Anne McKelvey Wright held a hearing on Jackson’s petition. At this hearing, Dorothy Thompson, the victim of the robbery for which Jackson was convicted, testified. Thompson testified that she was robbed while working at the cash register at Coy Trading Post and that the robber had worn a gold earring in a pierced ear. The petitioner called Jimmy Lee Gray at this hearing, but, because Gray was not represented by counsel, Judge Wright recessed the hearing until Gray could talk to an attorney.
On January 6, 1987, Judge Wright held another hearing. Thompson was not present because she was in Mobile with her husband, who was thought to be dying. Both the State and the petitioner moved for a continuance so that Thompson could be present. Judge Wright denied the continuance, reasoning that it would be no problem for the hearings to be held piecemeal except that the rest of the hearings would be before another judge. The hearing continued and Gray testified.
Against the advice of Gray’s counsel, Gray testified that he committed the robbery, not Jackson. Gray testified as follows: He, Jackson, and Jackson’s wife rode together from Birmingham to Wilcox County. They went in Jackson’s car, with Jackson going to visit Jackson’s father-in-law and mother-in-law and Gray going to visit Gray’s aunt. On the day of the robbery, Jackson had Gray over to visit with Jackson’s in-laws. Gray wore a gold earring for pierced ears that day. Jackson, with his father-in-law, went to Coy Trading Post, a neighborhood store a couple of blocks from Jackson’s in-laws’ home, to buy bread. While they were gone to buy bread, Gray approached the store by walking through some woods. After Jackson and his father-in-law left the store, Gray entered, asked the woman at the cash register how much Budweiser beer cost, and then pointed a .22 caliber pistol at the woman. Gray took a purse and a blue money bag, then hid them in an old deserted store building nearby. After this, Gray returned to the home of Jackson’s inlaws and he, along with Jackson and Jackson’s wife, went back to Birmingham. Gray stated that as soon as the three returned to Birmingham, he got in his car and returned to Wilcox County to pick up the purse and the money bag. Gray states unequivocally that he did not tell Jackson anything at all about how he, Gray, had robbed the store until after Jackson had been convicted and was in prison. After Gray’s testimony, Judge Wright recessed the hearing.
The next proceeding was held ten months later, on November 13, 1987. Circuit Judge Thigpen conducted this proceeding, because Judge Wright had left the bench. Thompson still refused to appear, because her husband was ill. Judge Thigpen decided at this proceeding to rule on the petition, *1372 based on the two hearings that Judge Wright had- held. Judge Thigpen denied Jackson’s petition for writ of error coram nobis, and the Court of Criminal Appeals affirmed the trial court's ruling.
An evidentiary hearing must be held on an error coram nobis petition that is meritorious on its face, that is, a petition that contains matters and allegations which, if true, entitle the petitioner to relief. Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985). Gray’s testimony, if believed, totally exculpates Jackson. Judge Thigpen, who finally ruled on Jackson’s petition, neither viewed, nor heard the testimony of, either the victim or witness Gray.
Courts are loath to set aside convictions on subsequent evidence, because frequently such late evidence is of doubtful credibility. However, if it appears that an innocent person has been found guilty, it is imperative that the error be corrected.
A proper ruling on the petition depends primarily on the credibility of Gray and Thompson. Under such circumstances, we think the best policy would be, where possible, that the judge who makes the determination should have had the opportunity to view the witnesses. By ordering another hearing, we do not suggest or imply what the result should be.
The judgment is due to be reversed, and the cause remanded for the trial court to conduct an evidentiary hearing.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
HOUSTON, J., dissents.